THE STATE, EX REL. RIGGS, APPELLANT AND CROSS-APPELLEE, *v.* OAK LAKE FARMS, INC.; INDUSTRIAL COMMISSION OF OHIO, APPELLEE AND CROSS-APPELLANT.

[Cite as State, ex rel. Riggs, *v.* Oak Lake Farms, Inc. (1986), 26 Ohio St. 3d 173.]

(No. 85-1255—Decided August 25, 1986.)

174

*Michael J. Muldoon,* for appellant and cross-appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet E. Jackson* and *Michael L. Squillace,* for appellee and cross-appellant.

*Per Curiam.* The primary issue before the court is whether the medical reports relied upon by the Industrial Commission to deny the appellant's claim of permanent total disability constitute evidence upon which such denial properly can be based. The appellant argues that neither of the medical reports that formed the basis for the commission's denial of benefits properly evaluated the *combined* effect of the appellant's physical and psychological conditions. The appellant's argument is persuasive.

"We held in *State, ex rel. Anderson,* v. *Indus. Comm., supra* [ (1980), 62 Ohio St. 2d 166 (16 O.O.3d 199) ], that where the issue before the commission is whether a claimant is permanently and totally disabled on account of the combined effect of two or more allowed conditions, medical testimony not evaluating the combined effect of those conditions can *not* constitute evidence that the claimant is *not* permanently and totally disabled. That is still good law, and therefore applies to discrediting the medical reports upon which the commission relied in finding a claimant *not* permanently and totally disabled." *State, ex rel. Thompson,* v. *Fenix & Scisson, Inc.* (1985), 19 Ohio St. 3d 76, 80.

Neither the report of Dr. J.Q. Brown nor the report of Dr. Robert L. Turton, both of which were expressly replied upon by the commission, evaluates the combined effect of the appellant's medical conditions. Dr. Brown's report, dated March 20, 1984, is limited to orthopedic evaluation; and, while Dr. Brown recognizes that conditions of "post traumatic anxiety with strong conversion overlay, schizophrenic like reaction" were previously allowed, he does not expressly or impliedly accept any findings of psychiatric or psychological examiners relating to the appellant's psychological condition. Dr. Brown expressly addresses only the appellant's physical impairment and then states that "any additional impairment would have to be the result of [her psychological condition] * * *. She is to see the psychiatrist today." Dr. Brown thus withholds comment on the appellant's total impairment.

Dr. Turton's report, dated March 19, 1984, deals directly with the appellant's psychological condition, and he adopts the findings of a psychiatrist and psychologist who determined that the appellant's physical injury "has been an aggravating stress" on her schizophrenic illness. Dr. Turton does not state, however, that he examined the appellant to determine the extent of her physical injury, nor does he adopt the findings of any examining physician that pertain to this injury. A non-examining physician who renders an opinion on the level of a claimant's impairment must "expressly adopt the factual findings of one or more examining physicians, which appear in the record, as the basis of his opinion. This rule, as interpreted in *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165 [22 O.O. 3d 400], also extends to medical opinions in combined effect claims, where the examining physician only examines for one allowed condition." *State, ex rel. Paragon,* v. *Indus. Comm.* (1983), 5 Ohio St. 3d 72, 74. Because Dr. Turton's report does not comply with the foregoing rule, like the report of Dr. Brown, it does not constitute evidence that the appellant is not permanently and totally disabled.

We thus are left only with the reports of Dr. Robert Williams and Dr. Allan Korb which were submitted as support for the appellant's claim.[1] Dr. Williams' report, dated July 8, 1975, indicates that he was not a treating physician, and speaks only in general terms of the appellant's physical and psychological conditions. Dr. Williams' report is only two paragraphs in length and does not provide any detail regarding either his physical examination or psychological or psychiatric evaluation of the appellant. For these reasons, the reliability of Dr. Williams' opinion, that the appellant has a "[o]ne hundred percent (100%) total and permanent disability," is called into question. Dr. Korb's report, on the other hand, provides a thorough discussion of the appellant's history, diagnosis, prognosis and

---

[1] Although the reports of other physicians are contained in the record, they do not address the level of the appellant's impairment based upon the combined effect of her conditions and were not expressly relied upon by the Industrial Commission in its denial of permanent total disability.

level of impairment. The report, dated February 6, 1984, expressly states that physical, psychological and psychiatric evaluations contained in the record of the appellant's claim "were extensively reviewed." The report then discusses, at great length, the appellant's psychological condition; and, although Dr. Korb does not detail his findings with regard to the appellant's physical condition, he adopts the findings in appellant's prior physical evaluations by his express diagnosis of "chronic lumbosacral strain." Dr. Korb's diagnosis further states that the appellant suffers from "[g]eneralized anxiety disorder (Post-Traumatic)" and "[s]chizophrenia, residual type, chronic, aggravated by [appellant's physical condition]." In conclusion, Dr. Korb's report opines that the appellant's "unfortunate back injury devastated her precarious emotional balance and as a consequence of her combined physical and psychiatric disorders she is permanently and totally disabled. She will require appropriate medical and psychiatric care for an indefinite period."

The appellee Industrial Commission contends that Dr. Korb's report is unreliable because, both prior and subsequent to the date of his report, Dr. Korb submitted to the Bureau of Workers' Compensation "C-19" billing forms on which he (or someone in his employ) had checked boxes indicating that the appellant's disability was "temporary total" rather than "permanent total." We find that the commission's contention is without merit.

First, the "C-19" form is designated as a "fee bill." Its purpose is to allow the treating physician to be reimbursed for services rendered — not to provide a medical record of the claimant's condition or history, or to state an *opinion* of the claimant's level of disability. Second, such forms are often filled out by secretaries or bookkeepers, who simply report the claimant's legal status (in terms of disability) according to the determination of the bureau. Last, the description of the appellant's disability on Dr. Korb's "C-19" forms as "temporary total" is accurate, because, at the time the forms were submitted, the appellant's last legally recognized disability was that of "temporary total"; and, even though Dr. Korb was of the opinion that the appellant had a permanent total disability, it would have been inaccurate to state on his "fee bill" that the appellant's disability was "permanent."

Based on the foregoing, we find that the record that was before the commission "contains reliable, probative and substantial evidence in accordance with the law to support a factual finding and determination that [the appellant] * * * is permanently and totally disabled, and there is no evidence to the contrary which meets such standards * * *." *State, ex rel. Thompson,* v. *Fenix & Scisson, Inc., supra,* at 81. The commission's determination that appellant is not permanently and totally disabled therefore is an abuse of discretion, and appellant is entitled to relief in mandamus.

Accordingly, the judgment of the court of appeals is reversed insofar as it is inconsistent with this opinion, the writ prayed for is allowed, and

the commission is ordered to vacate its denial of appellant's motion for permanent total disability and to issue an order that appellant is entitled to benefits for permanent total disability.

*Judgment reversed*
*and writ allowed.*

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. I dissent because I believe the record of this case supports the Industrial Commission's disallowance of permanent total disability.

The Industrial Commission based its ruling upon the medical reports of Drs. Robert L. Turton and J. Q. Brown. Dr. Robert L. Turton performed a psychiatric examination of appellant, Riggs, and submitted a report, noting that Riggs' allowed claims were for "[a]brasion of the right leg and a lumbosacral back strain, posttraumatic anxiety with a strong conversion overlay." Dr. Turton also noted that his report concerned "[d]etermination of permanent total impairment and [*sic*] view of the fact that the claim has been allowed for more than one condition. The totality of claimant's impairment is requested." Dr. Turton reviewed Riggs' medical history, including her treatment for both physical and psychiatric problems. He then expressed his opinion that "* * * the [schizophrenic] illness itself is completely unrelated to the [physical] injury," but that the physical injury had been an "aggravating stress." Dr. Turton concluded that the "totality" of Riggs' impairment was twenty-five to thirty percent. These observations in Dr. Turton's report reveal that he most certainly was aware that other allowed conditions existed that might potentially influence his conclusions with respect to impairment.

Similarly, Dr. J. Q. Brown noted in his report that Riggs had an allowed psychiatric condition in addition to the physical condition concerning which Dr. Brown had examined Riggs. Dr. Brown did not "* * * consider * * * [Riggs] to be permanently and totally imparied [*sic*] but only to have a partial impairment of low degree 10%." He noted that "* * * any additional impairment would have to be the result of the post traumatic anxiety with strong conversion overlay of schizophrenic like reaction."

The majority refers to this court's previous requirement that an examining physician who only examines a claimant for one allowed condition must "expressly adopt" the findings of one or more physicians who examined the claimant with regard to the other allowed conditions. See *State, ex rel. Paragon,* v. *Indus. Comm.* (1983), 5 Ohio St. 3d 72. The

evidence relied upon by the majority to support the issuance of the writ does *not*, however, satisfy this standard.

The majority analyzes Dr. Robert Williams' report and determines that its reliability is "called into question." In doing so the majority is weighing the evidence, in contravention of this court's longstanding "some evidence" rule. See, *e.g., State, ex rel. Hudson,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 169; *State, ex rel. Allerton,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 396 [23 O.O.3d 358]. The majority then relies on the medical report of Dr. Allan Korb. Dr. Korb, who specializes in psychiatry, not orthopedics, indicated a diagnosis of "[c]hronic lumbosacral strain," despite the fact that he only examined claimant's psychiatric condition. Dr. Korb did *not* expressly adopt the findings of any doctor who examined claimant's physiological condition; such adoption can only be implied from his stated diagnosis.

Both of these doctors were obviously aware that Riggs complained of another condition that was outside that doctor's particular field of medical expertise and which could influence the commission's ultimate decision as to disability. Each doctor referred to all of the allowed conditions in his report. Each of these reports provides evidence that the commission is entitled to consider and rely upon.

This court should not approach the record of this case on a *de novo* basis, using unrealistic evidentiary rules to exclude evidence the Industrial Commission has deemed credible and relevant. I respectfully suggest that the majority has simply substituted its judgment for that of the commission by rejecting the evidence that the commission deemed credible and relevant, and by weighing the credibility of other evidence that had been rejected by the commission. Certainly, some evidence existed to support the commission's findings. Clearly, the appellant has not demonstrated that the commission abused its discretion, nor has she shown that she has a clear legal right to relief.

Accordingly, I respectfully dissent.

LOCHER and HOLMES, JJ., concur in the foregoing dissenting opinion.