[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 585.]

THE STATE EX REL. THOMPSON, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Thompson v. Indus. Comm*., 1998-Ohio-187.]

*Workers' compensation—Industrial Commission abuses its discretion when it relies on C-19 fee billing forms to deny claim for temporary total disability compensation.*

(No. 95-2160—Submitted June 9, 1998—Decided August 12, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD08-1198.

_____

{¶ 1} On October 25, 1986, appellant, Daniel J. Thompson, was injured in the course of and arising from his employment with Roeckner Trucking Company. A workers' compensation claim resulting from the October 1986 injury was initially recognized for "[a]cute cervical and lumbar strain." As a result, appellee, Industrial Commission of Ohio, awarded Thompson temporary total disability compensation for a period from July 9, 1988 to July 15, 1989, and continuing "upon submission of sufficient medical proof."[1] The commission, however, denied Thompson temporary total disability compensation from the day after his injury until July 9, 1988. In denying him compensation for this period, the commission, in an order mailed May 9, 1994, explained:

"The Staff Hearing Officers find that the claimant was under the care of Dr. Palkowski for the period 10-26-86 to 7-8-88. The Staff Hearing Officers further find that Dr. Palkowski completed fee bills for treatment of the claimant for the period 10-26-86 through 7-8-88 wherein he responded that the claimant does not have a disability as a result of the injury. The Staff Hearing Officers further find

_____

1. In 1990, Thompson's workers' compensation claim was amended and additionally allowed for "L5-S1 IUD protrusion resulting in cephaligia and right sciatic grade III."

that Dr. Palkowski completed a C84 form on 6-28-88 setting forth his opinion that the claimant was unable to perform his former position of employment since the date of injury. The Staff Hearing officers find that in that the C84 form conflicts with the numerous C19 forms indicating Dr. Palkowski's opinion that the claimant had no disability due to the industrial injury for the same period, there is no credible evidence to determine that the claimant was disabled for that period.

"Accordingly, the claimant's request for the payment of Temporary Total Disability Compensation for the period 10-26-86 to 7-8-88 is denied.

"The finding and order herein [are] based on the application, evidence in the file and/or evidence adduced at the hearing."

{¶ 2} On August 16, 1994, Thompson filed a complaint in mandamus in the Court of Appeals for Franklin County, claiming that the commission had abused its discretion in denying his request for temporary total disability compensation for the period beginning on October 26, 1986 and running through July 8, 1988. The matter was initially heard by a referee (now magistrate), who, citing *State ex rel. Riggs v. Oak Lake Farms, Inc.* (1986), 26 Ohio St.3d 173, 26 OBR 149, 497 N.E.2d 720, concluded that the commission erred in relying on the C-19 fee bills in denying Thompson temporary total disability compensation for the period in question. The referee recommended to the court of appeals that it issue a writ of mandamus, order the commission to vacate its order denying the compensation for the disputed period, and "to further consider the question of temporary total disability without consideration of Dr. Palkowski's C-19 fee bills, and to issue an amended order granting or denying the requested compensation."

{¶ 3} Thereafter, both Thompson and the commission filed objections to the referee's report. The court of appeals overruled both parties' objections, adopted the referee's recommendation, and entered judgment accordingly.

{¶ 4} This cause is now before this court upon an appeal as of right.

—————————

*Hochman & Roach Co., L.P.A.*, and *Carla J. Lauer*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Cheryl J. Nester*, Assistant Attorney General, for appellee.

_____

**DOUGLAS, J.**

{¶ 5} The record in the case at bar contains several "C-19" fee billing forms submitted by Thompson's attending doctor, Dr. Palkowski, to the Bureau of Workers' Compensation. The billing forms contain checked boxes indicating that Thompson was not disabled. The commission, relying exclusively on these forms, denied Thompson temporary total disability compensation for the period beginning on October 26, 1986 and running through July 8, 1988.

{¶ 6} Thompson contends that the C-19 fee billing forms do not constitute evidence upon which a denial for temporary total disability compensation can be based. In support, Thompson relies on this court's decision in *State ex rel. Riggs v. Oak Lake Farms, Inc.* (1986), 26 Ohio St.3d 173, 176, 26 OBR 149, 151, 497 N.E.2d 720, 722-723. We agree with Thompson's contention, if not his analysis of *Riggs*, and find that the commission erred in relying on the C-19 billing forms to deny his claim.

{¶ 7} In *Riggs*, the commission denied the claimant's request for permanent total disability compensation and attempted to defend its order by discrediting a doctor's report that this court concluded was definitive evidence of the claimant's permanent and total disability. The doctor in *Riggs* opined in the medical report that the claimant was permanently and totally disabled. However, the doctor had also submitted C-19 fee billing forms that contained checked boxes indicating that the claimant's disability was "temporary total," not "permanent total." Relying on the C-19 billing forms, the commission argued that the doctor's medical report was unreliable evidence of the description of the claimant's disability. We rejected the commission's argument, setting forth three reasons:

"First, the 'C-19' form is designated a 'fee bill.' Its purpose is to allow the treating physician to be reimbursed for services rendered—not to provide a medical record of the claimant's condition or history, or to state an *opinion* of the claimant's level of disability. Second, such forms are often filled out by secretaries or bookkeepers, who simply report the claimant's legal status (in terms of disability) according to the determination of the bureau. Last, the description of the appellant's disability on Dr. Korb's 'C-19' forms as 'temporary total' is accurate, because, at the time the forms were submitted, the appellant's last legally recognized disability was that of 'temporary total'; and, even though Dr. Korb was of the opinion that the appellant had a permanent total disability, it would have been inaccurate to state on his 'fee bill' that the appellant's disability was 'permanent.' " (Emphasis *sic*.) *Id*., 26 Ohio St.3d at 176, 26 OBR at 151, 497 N.E.2d at 722-723.

{¶ 8} As correctly urged by Thompson, *Riggs* establishes that the purpose of a C-19 fee billing form is not to provide a medical record of the claimant's condition or history, or to set forth an opinion of the claimant's level of disability. Rather, the purpose of such a form is simply to apprise the Bureau of Workers' Compensation of the amount the treating physician is seeking for services rendered. In this regard, a C-19 fee billing form cannot be used as evidence by the commission to impeach a report designed to advise of a claimant's medical condition. *Riggs*, and our holding today, accurately reflect the realities of the workers' compensation system. Accordingly, any reliance by the commission on the C-19 fee billing forms as evidence of Thompson's disability was clearly an abuse of discretion.

{¶ 9} Thompson also contends that a finding by this court that the commission abused its discretion in relying on the C-19 fee billing forms to deny his claim necessitates the issuance of a full writ ordering the commission to award him temporary total disability compensation for the period in question. According

to Thompson, returning the cause to the commission to review his claim "for the third time is an exercise in futility."

{¶ 10} We agree with Thompson that the record in this case contains ample medical evidence to support an award of temporary total disability compensation for the period in question. The record contains an "Attending Physician's Questionnaire" and numerous C-84 medical forms submitted by Dr. Palkowski that support Thompson's claim. We also agree with the court of appeals that "the C-84 form is a long standing and commonly used form for the reporting by physicians regarding the condition and extent of disability of a claimant." Notwithstanding, in our continuing deference to the commission, we believe that the commission should be given a chance to review Thompson's claim without consideration of Dr. Palkowski's C-19 fee billing forms.

{¶ 11} Accordingly, the judgment of the court of appeals is affirmed, and a limited writ is issued that returns the cause to the commission for further consideration and amended order.

*Judgment affirmed*
*and limited writ allowed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 12} I respectfully dissent. Pursuant to Section 35, Article II of the Ohio Constitution, the commission is charged with administering the State Insurance Fund. As a part of that function, the commission asks physicians to include more information in the "attending physician's fee bill" (C-19) than just amounts sought for medical services. If requesting and obtaining the information is within the

province of the commission, this court usurps the authority of the commission by limiting the use of that information without proper reason.

{¶ 13} The reasons given in *State ex rel. Riggs v. Oak Lake Farms, Inc.* (1986), 26 Ohio St.3d 173, 26 OBR 149, 497 N.E.2d 720, for declaring C-19 fee bills to be unreliable evidence are unpersuasive. Each reason actually represents the sort of factor that affects the weight to be given to C-19 responses, which is a function exclusively within the province of the commission. *State ex rel. Binegar v. Indus. Comm.* (1997), 80 Ohio St.3d 470, 474, 687 N.E.2d 437, 440.

{¶ 14} C-19 fee bills are documents like any other that might be offered as proof. They are not intrinsically untrustworthy. *Riggs* makes much of the fact that secretaries or bookkeepers fill out the C-19 forms, but the same could be said of any form completed by a doctor's office — including the C-84's supporting Thompson's position. Notably, Thompson's doctor signed and certified that the C-19 fee bills here were accurate.

{¶ 15} The commission, as trier-of-fact, should have had authority to consider the C-19 form representation that Thompson had no disability due to his injury. That consideration is assessed with the C-84 form representations that Thompson did have such a disability. And under established precedent, the commission was entitled to disregard both sets of forms on the ground that they were too equivocal to constitute credible evidence of Thompson's temporary total disability. *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 657, 640 N.E.2d 815, 821; *State ex rel. Chrysler Corp. v. Indus. Comm.* (1998), 81 Ohio St.3d 158, 164, 689 N.E.2d 951, 956. Thus, the commission did not abuse its discretion in finding that no evidence proved Thompson's eligibility for temporary total disability compensation or in denying this relief.

{¶ 16} I would reverse the court of appeals' judgment and deny the writ of mandamus, leaving the commission's order undisturbed.

_____